# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4494 | **DATE** | 7/24/2002 |
| **CASE TITLE** | Lawanda Carter vs. Enterprise Rent-A-Car | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached Memorandum Opinion and Order, the defendant's motion for summary judgement against the plaintiff's complaint is denied. [Doc. #s 24,27].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 29 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | | 39 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| vg(lc) | courtroom deputy's initials | 02 JUL 26 PM 6:39 U.S. DISTRICT COURT Date/time received in central Clerk's Office | JUL 29 2002 date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Lawanda Carter, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 01 CV 4494 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| Enterprise Rent-A-Car Company a/k/a | ) |
| Enterprise Rent-A-Car Company-Midwest, | ) |
| Charlie Petrolia, and Sarah Ruiz | ) |
| | ) |
| Defendants. | ) |

DOCKETED

JUL 29 2002

## MEMORANDUM OPINION AND ORDER

Before this court is defendant's, Enterprise Rent-A-Car Company a/k/a Enterprise Rent-A-Car Company-Midwest ("Enterprise"), motion for summary judgement, pursuant to Fed. R. Civ. P. 56., against plaintiff's, Lawanda Carter ("Carter"), complaint containing allegations of discriminatory retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. For the following reasons the defendant's motion is DENIED.

### Statement of Facts

Carter was employed by Enterprise which rents automobiles to individuals and businesses through its various branches in the Chicagoland area. Enterprise's rental branches are small, ordinarily employing between three and five individuals.

In 2001, Carter was an Assistant Manager at Enterprise's South Shore branch, located on 75th Street in Chicago. As Assistant Manager, Carter was responsible for, in part, general operation of the South Shore branch, including servicing customer, completing financial paperwork, making sales calls and training more junior employees.

1

The South Shore branch employed three other employees: Rubin Vasquez (car porter) ("Vasquez"), Eric McAtee (Management Trainee) ("McAtee"), and Stacey Cole (Branch Manager) ("Cole").

Carter reported directly to Branch Manager Cole. Cole, in turn, reported to the South Chicago area Manager Jason Roof ("Roof"). Roof supervised three branches in the South Chicago area. Roof reported to Regional Vice President Charlie Petrolia ("Petrolia"). Petrolia oversaw all of the branches in the South Chicagoland Region, including the South Shore branch. Human Resources Generalist Manager Sarah Ruiz ("Ruiz") supported the South Chicagoland Region in 2001. Ruiz reported directly to Petrolia.

Responsibilities shared by all branch employees included putting gas in a customer's car or in the car being used the branch manager. To facilitate this process, Enterprise enlists an outside vendor, Wright Express, to issue gasoline cards to Enterprise's branches. These cards allow branch employees to use these gas cards to purchase fuel at local filling stations. Wright Express then collects the charge data from the various filling stations and collectively bills Enterprise for the gasoline. The South Shore facility was issued two gas cards: one assigned to Cole and one for general branch use. Enterprise issues a personal identification number ("PIN") to each employee using a gas card in order to identify when and where an employee used the gas card.

Cole was permitted to use a company car to get her home and back to the office. Employees generally, including Cole, were not allowed to put gas in a car for their personal benefit,. Roof admits that prior to the investigation incriminating Carter he knew that several employees were taking gas cards home. Roof states that he believed that the repeateded

disappearance of the South Shore gas card was a cause for concern. And Cole admits that she sometimes would put in half a tank so that she could pick up and drop off her daughter.

In late 2000 or early 2001, Carter informed Cole that she would need to take two months leave in order to care of her ill son. According to Carter, Cole allowed Carter one or two days of leave but no more. Soon thereafter, Carter spoke to Ruiz who was visiting the South Shore Branch. Ruiz agreed to send Carter FMLA forms to fill out and submit. A week later, Carter had not yet received the forms so she called Ruiz again. Carter advised Cole that she would be submitting the FMLA application.

According to Carter, she sent the completed FMLA paperwork to Ruiz on February 16, 2001, via inter-office mail. The paperwork requested leave from March 16, 2001 to May 31, 2001. Ruiz testifies, however, that she never received Carter's completed FMLA paperwork.

On February 15, 2001, for the first time in Carter's employment, Cole sent Carter home for the day. The next morning, February 16th, Carter was sent to Hobart, Indiana to respond to questions by Ruiz and Petrolia who were conducting an investigation about an employee's misuse of a gas card. According to Carter, this was the first investigation of this type ever conducted in the South Chicagoland Region. In the meeting that occurred on February 16, both Petrolia and Ruiz asked Carter general questions about Carter's use of the company gas card on February 13, 2001 after closing. Carter told Petrolia that she left work on February 13, 2001 between 6:30 and 6:45 p.m. Carter does not deny that she used the gas card at 6:31 pm on February 13. Carter told Petrolia that on that day, she used the gas card to fuel a company car while taking customers to their destinations. Carter also confirmed Ruiz's receipt and completion of the FMLA documents. When the meeting concluded, Carter was sent home for

the second day in a row.

On February 21st, six days after filing her FMLA claim, Petrolia, Ruiz and Carter met at the Enterprise's Chicago Heights Branch. Petrolia asked Carter further questions about her use of the gas card on February 13th, including whether she could identify the customers she helped after closing that day. According the Petrolia, in that meeting Carter was unable to provide any other information that supported her previous statements that she was assisting customers. Petrolia testifies that based on this investigation, he concluded that Carter's 6:31 gas charge was for personal use and a terminable work rule violation. Petrolia and Ruiz signed Carter's termination memorandum and presented it to Carter at the meeting.

Enterprise moves for summary judgement against Carter's complaint of retaliatory discharge.

**Standard of Review**

Summary judgment may only be granted when no material question of fact is in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252, 106 S.Ct. 2505, 2511-12 (1986). The party moving for summary judgment bears the burden of identifying the evidence that demonstrates the absence of a disputed material issue of fact and establishes that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53 (1986). The evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved and all reasonable inferences drawn in favor of the nonmoving party. Anderson, 477 U.S. at 2513. Further, "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive

evidentiary standard of proof that would apply at the trial level on the merits." Anderson, 477 U.S. at 2512. In employment discrimination cases, this standard is applied with "added rigor" before granting summary judgment. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993).

### Analysis

Defendant argues that plaintiff is unable to establish *prima facie* case of retaliation under the FMLA. This court disagrees.

While the FMLA provides certain substantive guarantees, "the FMLA also affords employees protection in the event they are discriminated against for exercising their rights under the Act." King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir.1999).

In a case where an employee is alleging discrimination based on the FMLA, "[t]he issue becomes whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Id.; see also Horwitz v. Board of Educ. of Avoca School Dist. No. 37, 260 F.3d 602, 616 (7th 2001 ).

Because Carter alleges retaliatory discharge under the FMLA, she must establish that the parties involved engaged in intentional discrimination. Horwitz, 260 F.3d at 892. Since Carter has not provided this court with any direct evidence of discrimination, we will apply the McDonnell Douglas burden-shifting framework to her claim.

To prove a prima facie case of retaliatory discharge under the FMLA, Carter must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between her protected activity and the defendant's' adverse employment action. Id.

5

If she makes that showing, the burden of producing a legitimate, nondiscriminatory reason for her discharge shifts to Enterprise, and once it does so, Carter bears the burden of showing that Enterprise's proffered reasons are pretextual and that its actual reason was discriminatory. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Dey v. Colt Construction & Development Co., 28 F.3d 1446, 1458 (7th Cir. ??); Johnson v. Sullivan, 945 F.2d 976, 980 (7th Cir.1991); Holland, 883 F.2d at 1313.

Defendant argues that Carter is unable to establish a prima facie case of retaliatory discharge because she cannot establish a causal connection between her request for FMLA leave and her termination. Carter argues that she has established the requisite causal connection.

Generally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity. See Dey, 28 F.3d at 1458. The Appellate Courts agree, however, that there can be no causal link between protected activity and an adverse employment action if the employer remained unaware of the protected activity. See, e.g., Dey, 28 F.3d at 1458; Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir.1993); Williams v. Rice, 983 F.2d 177, 181 (10th Cir.1993); EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 n. 1 (9th Cir.1983).

In this case, viewing the evidence in a light most favorable to the plaintiff, a genuine issue of material fact exists as to whether Carter has established a prima facie case of retaliatory discrimination. According to Carter, she was subject to an internal investigation and termination only subsequent to her request for leave under the FMLA. She, in fact, was terminated only six days after she submitted the completed FMLA documentation. Enterprise contends that a causal

6

connection is impossible to establish because Carter cannot prove that Petrolia had knowledge that Carter had requested FMLA leave prior to launching an investigation of Carter's alleged fraudulent use of the Enterprise gas card.

Carter, however, is not required to demonstrate by direct evidence that Roof and Petrolia were aware of her request for FMLA leave. A Title VII plaintiff may rely on circumstantial evidence to establish her employer's awareness of protected expression. Dey, 28 F.3d at 1458. Moreover, Carter need not prove by a preponderance of the evidence at the summary judgment stage that Petrolia was aware of her request for leave under the FMLA; she must only produce evidence that would support an inference that he was so aware. Id.

Summary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action. See Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir.1990) (even where the plaintiff's supervisor may not have passed along discriminatory animus to the ultimate decisionmaker, that animus tainted his assessment of the plaintiff's performance, on which the decisionmaker did rely); Jardien v. Winston Network, Inc., 888 F.2d 1151, 1155 (7th Cir.1989) (relevant to jury's determination in age discrimination case that decisionmaker accepted input from supervisor who had discriminatory motive); see also Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1165-66 (7th Cir.1994) (summary judgment improper where supervisor who allegedly made age- related remarks participated in ranking the performance of company employees and in the eventual decision to terminate the plaintiff's employment); Gusman v. Unisys Corp., 986 F.2d 1146, 1147 (7th Cir.1993) (reasonable jurors could conclude that a supervisor intent on purging the workforce of older employees lied to his superiors about

7

the quality of the plaintiff's job skills); Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316 (8th Cir.1994) (employers cannot escape responsibility for sex discrimination "when the facts on which the reviewers rely have been filtered by a manager determined to purge the labor force of women."); Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1057-60 (8th Cir.1993) (evidence sufficient to support sex discrimination claim where superior's discriminatory animus was reflected in the information he provided to ultimate decisionmakers); cf. Wilson v. Stroh Cos., 952 F.2d 942, 945-46 (6th Cir.1992) (Title VII plaintiff failed to show that lower level employee with discriminatory animus infected superiors' independent decision to terminate plaintiff's employment).

Accepting Carter's facts as true for the purposes of this summary judgement motion, Carter has sufficiently supported an inference that Cole's animus may have informed and/or "tainted" Petrolia's decision to investigate and terminate Carter. For example, according to Carter, Cole threatened her when she requested initially requested a two month leave. In addition, Carter's assertions are supported by the fact that Cole had never reported anyone for taking a gas card home, and only reported Carter after Carter had asked Cole for leave under the FMLA. Finally, according to Carte and Cole, Cole spoke to Petrolia and discussed Cole's belief that Carter had taken the gas card, again, only after Carter had mentioned that she wanted an extended leave.

This court finds that the above creates a viable inference that the investigation of Carter's fraudulent gas card usage and her subsequent termination occurred in retaliation to her request for FMLA leave. Enterprise disagrees with this inference, arguing that the investigation itself, as well as its consequences, were independent decisions made by Petrolia. This, therefore, is a

8

genuine issue of material fact.

Viewing the evidence in a light most favorable to the plaintiff, this court then assumes for the purposes of this summary judgement motion that Carter has established the requisite causal connection. Under the McDonnel-Douglas test, Enterprise must now produce a legitimate, nondiscriminatory reason for Carter's discharge; if it does so Carter bears the burden of showing that Enterprise's proffered reasons are pretextual and that its actual reason was discriminatory. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 In this court's opinion, there is a genuine issue of material fact with respect whether Enterprise's proffered reason is pretextual and that its actual reason was discriminatory.

Enterprise contends that Carter was terminated due to her misuse of a company gas card. Carter argues that Carter's reason for terminating is pretextual because Enterprise only became concerned about the fraudulent use of the gas card around the time that Carter requested leave under the FMLA, and further, that Carter was alone punished for her usage of the card despite the fact that others were found to have engaged in the same behavior.

A plaintiff may establish that her employer's non-discriminatory reason for the adverse employment actions is pretextual by showing that the reason "(1) had no basis in fact, (2) did not actually motivate [her] discharge, or (3) [was] insufficient to motivate the discharge." McClendon v. Indiana Sugars, Inc., 108 F.3d 789 (citing Collier v. Budd Co., 66 F.2d 886, 892 (7th Cir. 1995). Moreover, because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into summary judgement can act to preclude summary judgement. Perdomo v.Browner, 67 F.3d 140, 145 (7th Cir. 1995). Pretext, however, " means more than an unusual act; it means something worse than a business error:

9

'pretext' means deceit used to cover one's tracks." Clay v. Holy Cross Hosp., 253 F.3d 1000, 1005 (7th Cir. 2001).

The plaintiff supports her contention of pretext primarily by demonstrating that discrepancies in testimony exist between those who propagated the gas card investigation, and subsequently Carter's termination, and other employees of Enterprise. For example, Area Manager Roof's concern for misuse of the South Shore gas card as well as his conversations with Cole and McAtee with respect to the gas card are not corroborated by other employees at Enterprise or even testimony by Cole or McAtee. In addition, Roof admits that prior to the investigation implicating Carter he knew that several employees had taken a gas card home. The record does not indicate, however, that Roof believed it was a matter of concern. Carter further supports her assertions by demonstrating the possibility that the investigation of fraudulent gas card use began the day before she submitted her FMLA claim and throughout the investigation she was singled out for disparate treatment. For the three month period from Cole's arrival as manager in November 2000 until Carter termination, there were twenty-five after-hours gasoline purchases for the branch. Of these purchases, 13 were by Cole, 7 were by Junea Buford (car porter) and the remaining 5 were by Carter. In fact, there are two instances in which Cole made two gas purchases within five minutes of one another, and no investigation was conducted in those instances.

Enterprise contends that no reasonable fact-finder could find in favor of chain of events as construed by Carter. Enterprise does not, however, provide evidence to contradict the discrepancies pointed out by Carter. Instead, it argues that those discrepancies are irrelevant. This court disagrees.

Ultimately the question for the trier of fact is whether the reason why Carter was terminated was her invocation of the FMLA. A this point, this court cannot answer that question as a matter of law. Consequently, Enterprise's motion for summary judgement is denied.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgement is DENIED.

Enter:

**David H. Coar**

**United States District Judge**

Dated: 7/24/02